Name: Keith E. Olmeda

Prison Number: 20651-017

Place of Confinement: U.S.P. Tucson

## UNITED STATES DISTRICT COURT

### FOR THE Northern DISTRICT OF Florida

### Gainesville DIVISION

)
UNITED STATES )    Case No. 1-09-cR-30-SPM)GRJ-1
)
v. )    **MOTION TO VACATE, SET ASIDE, OR**
)    **CORRECT SENTENCE BY A PERSON IN**
Keith Edward Olmeda )    **FEDERAL CUSTODY**
[full name of movant] )
)

***Instructions:***

(1) To use this form, you must be a person who is serving a sentence under a judgment against you in federal court. You are asking for relief from the conviction or the sentence. This form is your motion for relief.

(2) You must file the form in the United States district court that entered the judgment that you are challenging. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file the motion in the federal court that entered that judgment.

(3) Make sure the form is typed or neatly written.

(4) You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

(5) Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or arguments, you must submit them in a separate memorandum.

1

(6) If you cannot pay for the costs of this motion (such as costs for an attorney or transcripts), you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you.

(7) In this motion, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different judge or division (either in the same district or in a different district), you must file a separate motion.

(8) When you have completed the form, send the original and two (2) copies to the Clerk of the United States District Court whose address is 401 SE. First Ave., Room 243. Gainesville, FL. 32601

(9) CAUTION: You must include in this motion all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this motion, you may be barred from presenting additional grounds at a later date.

(10) CAPITAL CASES: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.

2

## MOTION

1.  (a) Name and location of court that entered the judgment of conviction you are
    challenging:
    Federal Building 401 southEast First Ave. Room 243 Gainesville, FL. 32601

    (b) Criminal docket or case number (if you know): 1:09-cr-00030-SPM-AK-1

2.  (a) Date of judgment of conviction (if you know): February 1, 2010

    (b) Date of sentencing: February 1, 2010

3.  Length of sentence: 150 years

4.  Nature of crime (all counts):
    5 counts of 18 USC 2251 (A)

5.  (a) What was your plea? (Check one)

    (1) Not guilty: _____

    (2) Guilty: ✓

    (3) Nolo contendere (no contest): _____

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to
    another count or indictment, what did you plead guilty to and what did you plead not
    guilty to? _____

6.  If you went to trial, what kind of trial did you have? (Check one)

    (a) Jury: _____

    (b) Judge only: _____

3

7.   Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes _____ No _✓_

8.   Did you appeal from the judgment of conviction?   Yes _✓_ No _____

9.   If you did appeal, answer the following:

   (a) Name of court: _U.S. Court of Appeals for the Eleventh Circuit_

   (b) Docket or case number (if you know): _415 Fed. Appx. 193 ; 2011 U.S. App. Lexis 3589_

   (c) Result: _Affirmed_ _____

   _____

   _____

   (d) Date of result: _February 23, 2011_ _____

   (e) Citation to the case (if you know): _____

   (f) Grounds raised: _Failing to inform me at the plea colloquy that my_
   _sentence could be imposed to run consecutively_ _____

   _____

   _____

   _____

   (g) Did you file a petition for certiorari in the United States Supreme Court ?
       Yes _____ No _✓_

       If "Yes," answer the following:

       (1) Docket or case number (if you know): _____

       (2) Result: _____

       _____

       _____

       (3) Date of result (if you know): _____

       (4) Citation to the case (if you know): _____

       (5) Grounds raised: _____

       _____

       _____

4

_____

_____

10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?
Yes _____ No __✓__

11.  If your answer to 10 was "Yes," give the following information:

(a)  (1)  Name of court: _____

(2)  Docket or case number (if you know): _____

(3)  Date of filing (if you know): _____

(4)  Nature of proceeding: _____

(5)  Grounds raised: _____

_____

_____

_____

_____

_____

(6)  Did you receive a hearing where evidence was given on your motion, petition, or application? Yes _____ No _____

(7)  Result: _____

_____

_____

(8)  Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

(1)  Name of court: _____

(2)  Docket or case number (if you know): _____

(3)  Date of filing (if you know): _____

(4)  Nature of proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application? Yes _____ No _____

(7) Result: _____

_____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition, etc. Yes _____ No _____

(2) Second petition, etc. Yes _____ No _____

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: _____

_____

_____

_____

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

GROUND ONE: Denial of Due Process at sentencing

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Deference to 262.1 without Sufficient Analysis of it's Flawed history leads to Sentences imposed in violation of the Due Process protections of the Fifth Amendment.

6

_____

_____

(b) Direct Appeal of Ground One:

    (1) If you appealed from the judgment of conviction, did you raise this issue?
Yes _____ No ✓

    (2) If you did not raise this issue in your direct appeal, explain why:
_Court Appointed Attorney responsible for Appeal_
_Did Not raise the issue._ _____

_____

_____

(c) Post-Conviction Proceedings:

    (1) Did you raise this issue through a post-conviction motion, petition or
application? Yes _____ No ✓

    (2) If you answer to Question (c)(1) is "Yes," state:

        Type of motion or petition: _____

        Name and location of the court where the motion or petition was filed:

        _____

        Docket or case number (if you know): _____

        Date of the court's decision: _____

        Result (attach a copy of the court's opinion or order, if available):

        _____

        _____

        _____

    (3) Did you receive a hearing on your motion, petition, or application?
Yes _____ No _____

    (4) Did you appeal from the denial of your motion, petition, or application?
Yes _____ No _____

7

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? Yes _____ No _____

(6) If you answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

_____

(7) If you answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

_____

GROUND TWO: _Violation of the Separation of Powers Doctrine_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _The Protect Act violates the Separation-of-powers doctrine because it surreptitiously encroaches on judicial independence._

_____

_____

(b) Direct Appeal of Ground Two:

(1) If you appealed from the judgment of conviction, did you raise this issue? Yes _____ No _✓_

(2) If you did not raise this issue in your direct appeal, explain why: _Same as ground one (b) (2)_

_____

_____

8

_____

_____

(c) Post-Conviction Proceedings:

    (1) Did you raise this issue through a post-conviction motion, petition or application? Yes _____ No ✓____

    (2) If you answer to Question (c)(1) is "Yes," state:

        Type of motion or petition: _____

        Name and location of the court where the motion or petition was filed:

        _____

        Docket or case number (if you know): _____

        Date of the court's decision: _____

        Result (attach a copy of the court's opinion or order, if available):

        _____

        _____

        _____

    (3) Did you receive a hearing on your motion, petition, or application? Yes _____ No _____

    (4) Did you appeal from the denial of your motion, petition, or application? Yes _____ No _____

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? Yes _____ No _____

    (6) If you answer to Question (c)(4) is "Yes," state:

        Name and location of the court where the motion or petition was filed:

        _____

        Docket or case number (if you know): _____

        Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____
_____
_____

(7) If you answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not raise this issue: _____

_____
_____
_____
_____

GROUND THREE: <u>Denial of Due Process and Equal Protection</u>

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): <u>Unequal Treatment of Similarly Situated Defandants Based on Definition of "life" Punishment.</u>

_____
_____
_____

(b) Direct Appeal of Ground Three:

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes _____ No ✓

(2) If you did not raise this issue in your direct appeal, explain why:

_____
_____
_____
_____

(c) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion, petition or application? Yes _____ No ✓

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

10

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?
Yes _____ No _____

(4) Did you appeal from the denial of your motion, petition, or application?
Yes _____ No _____

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? Yes _____ No _____

(6) If you answer to Question (c)(4) is "Yes," state:

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

_____

_____

(7) If you answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

_____

11

GROUND FOUR: _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____

_____

_____

(b) Direct Appeal of Ground Four:

    (1) If you appealed from the judgment of conviction, did you raise this issue?
    Yes _____ No _____

    (2) If you did not raise this issue in your direct appeal, explain why:

_____

_____

_____

_____

(c) Post-Conviction Proceedings:

    (1) Did you raise this issue through a post-conviction motion, petition or
    application? Yes _____ No _____

    (2) If you answer to Question (c)(1) is "Yes," state:

        Type of motion or petition: _____

        Name and location of the court where the motion or petition was filed:

        _____

        Docket or case number (if you know): _____

        Date of the court's decision: _____

        Result (attach a copy of the court's opinion or order, if available):

        _____

        _____

        _____

12

(3) Did you receive a hearing on your motion, petition, or application?
Yes _____ No _____

(4) Did you appeal from the denial of your motion, petition, or application?
Yes _____ No _____

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? Yes _____ No _____

(6) If you answer to Question (c)(4) is "Yes," state:

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____
_____
_____

(7) If you answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not raise this issue: _____

_____
_____
_____
_____

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: Grounds have not been presented before because this is my First 2255.

_____
_____
_____

14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the judgment you are challenging? Yes _____ No ✓

13

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _Darren Johnson Fed.Pub.Def. 101 SE. 2nd Pl., Ste. 112_

(b) At arraignment and plea: _Gainesville, FL. 32601_

(c) At trial: _____

(d) At sentencing: _SAME AS Above_

(e) On appeal: _Chet Kaufman Asst.Fed.Pub.Def. 227 N.Bronough St., Ste 4200 Tallahassee, FL. 32301_

(f) In any post-conviction proceeding: _N/A_

(g) On appeal from any adverse ruling against you in a post-conviction proceeding: _N/A_

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes ✓ No ___

17. Do you have any future sentence to serve after you complete the sentence for the judgment you are challenging? Yes ___ No ✓

(a) If so, give name and location of the court that imposed the other sentence you will serve in the future: _____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application, that challenges the judgment or sentence to be served in the future? Yes ___ No ___

14

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C.A. § 2244(d) does not bar your motion.* _Conviction Affirmed February 23rd, 2011_ _Supreme Court was Due on May 23rd 2011. Did not seek 'Certiorari_ _2255 motion is Due on May 23rd 2012; Mailed under Mailbox Rule_ _on May 15, 2012._

*The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.A. § 2255, paragraph 6, provides in part that:
A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief: _Vacate Conviction and sentence_
*[type of relief]* or any other relief to which movant may be entitled. _See: Conclusion_

I, _____
   *[Signature of Attorney (if any)]*

I *[declare or certify or verify or state]* under penalty of perjury that the foregoing is true and correct and that this Motion Under 28 U.S.C.A. § 2255 was placed in the prison mailing system on _May 15, 2012_ *[date]*. Executed (signed) on _May 15, 2012_ *[date]*.

_____
*[Signature of movant]*

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

_____

_____

_____

_____

_____

TABLE OF CONTENTS    1-09-CR-30-
SPM-GRJ-1

Page

TABLE OF CONTENTS..........................................i

TABLE OF CASES AND AUTHORITIES............................ii

DEFENDANT'S MOTION UNDER 28 USCS 2255.....................1

DEFENDANT'S MEMORANDUM OF LAW AND STATEMENT OF FACTS.......1

OVERVIEW OF THE CASE......................................1

ISSUES AND SUPPORTING ARGUMENTS TOGETHER WITH POINTS

    AND AUTHORITIES OF LAW AND SUPPORTING FACTS...........3


GROUND ONE: Denial of Due Process at sentencing............3


GROUND TWO:Violation of the Separation of Powers Doctrine.17


GROUND THREE: Denial of Due Process and Equal Protection..23


CONCLUSION...............................................25


CERTIFICATE OF

SERVICE..................................................26

Cases                                                                    Page

Apprendi v. New Jersey, 530 US 466 (2000)................17

Blakely v. Washington, 542 US 296 (2004).................17

Bowsher v. Synar, 478 US 714 (1986)......................22

Buckley v. Valeo, 424 US 1 (1976)........................18

Cafeteria & Restaurant Warkers v. McElroy,

                367 US 886 (1961).........................13

Chapman v. United States, 500 US 453 (1991)..............18

Commodity Futures Trading Com. v. Schor,

                478 US 833 (1986).........................18

Gall v. United States, 552 US 38 (2007)..................4

Garner v. Florida, 430 US 349 (1977).....................12

Gordon v. United States, 2011 WL 2638133 (SDNY, 2011)....15

Hill v. United States, 368 US 424 (1962).................16

Mathews v. Eldridge, 424 US 319 (1976).................13,14

Meyer v. Nebraska, 262 US 390 (1923).....................15

Michael H. v. Gerald D., 491 US 110 (1989)...............15

Mistretta v. United States, 488 US 361 (1989).....6,13,18-21

Morrissey v. Brewe, 408 US 471 (1972)..................12,13

Nelson v. United States, 555 US 350 (2009)...............4

Nixon v. Adm'r of Gen. Servs., 433 US 425 (1977).........18

Rita v. United States, 551 US 38 (2007)..................4

Skidmore v. Swift & Co., 323 US 134 (1944)...............7

Snyder v. Massachusetts, 291 US 97 (1934)................15

Townsend v. Burke, 334 US 736 (1948).....................12

Williams v. New York, 337 US 241 (1949)..................12

United States v. Arrelucea-Zamudio, 581 F.3d 142 (2009)...21

United States v. Baird,

            580 F Supp 2d 889 (D Neb, 2008)............10

United States v. Beiermann,

     599 F Supp 2d 1087 (ND Iowa, 2009).........10

United States v. Booker, 543 US 220 (2005)..............3,4,7

United States v. Brown, 381 US 437 (1965)..................17

United States v. Burns,

     2009 US Dist LEXIS 100642 (ND III, 2009)...10

United States v. Diaz, 720 F Supp 2d 1039 (ED Wis, 2010)....9

United States v. Dorvee, 616 F.3d 174 (2nd Cir. 2010).9,11,16

United States v. Doktor,

     2008 US Dist LEXIS 104737 (MDFL, 2008).....10

United States v. Dumas, 934 F.2d 1387 (6th Cir., 1990),

     cert denied, 500 US 925 (1991).............21

United States v. Falgout,

     325 Fed Appx 775 (11th Cir., 2009).........24

United States v. Grober, 624 F.3d 592 (3rd Cir., 2010).....10

United States v. Hanson,

     561 F Supp 2d 1004 (ED Wis, 2008)..........10

United States v. Henry, 472 F.3d 910 (DC Cir., ),

     cert. denied, 552 US 888 (2007).............3

United States v. Howard,

     2010 US Dist LEXIS 17740, (D Neb, 2010)....10

United States v. Irey, 612 F.3d 1160 (11th Cir., 2010),

     cert. denied, 131 S Ct 1813 (2011)..........3

United States v. Jensen,

     493 F.3d 997 (8th Cir., 2007)..............23

Unites States v. Lewis,

     594 F.3d 1270 (10th Cir., 2010)...........24

United States v. Martin,

     455 F.3d 1227 (11th Cir., 2006)...........4

United States v. Manke,

  2010 US Dist LEXIS 3757 (ED Wis, 2010)....10

United States v. McElheney,

  630 F Supp 2d 886 (ED Tenn, 2009).........10

United States v. Noxon,

  2008 US Dist LEXIS 87477 (D Kan, 2008)....10

United States v. Ontiveros,

  2008 US Dist LEXIS 58774 (ED Wis, 2008)...10

United States v. Phinney,

  599 F Supp 2d 1037 (ED Wis, 2009).........10

United States v. Poole,

  2011 US App LEXIS 21320 (4th Cir., 2007)..24

United States v. Raby,

  2009 US Dist LEXIS 121836 (SD W Va, 2009)..10

United States v. Riley,

  655 F Supp 2d 1298 (SD Fla, 2009).........10

United States v. Russell,

  662 F.3d 831 (7th Cir., 2011).............23

United States v. Selby,

  184 Fed Appx 589 (8th Cir., 2006).........24

United States v. Shipley,

  560 F Supp 2d 739 (SD Iowa, 2008).........10

United States v. Stern,

  590 F Supp 2d 945 (ND Ohio, 2008).........10

Youngstown Sheet & Tube Co. v. Sawyer, 343 US 579 (1952)..17


Statutes

Prosecutorial Remedies and Other Tools to End the

    Exploitation of Children Today (PROTECT)

Act of 2003, Pub.L.21, §401, 117 Stat.650 (2003)..8

Sentencing Reform Act of 1984, Pub.L.No.98-473,

98 Stat. 1987 (1984)..............................3

18 USC § 2251(a).......................................2,9

18 USC § 2251(e)........................................21

18 USC § 3553(a)............................6,11,14,21,23

28 USC § 991.......................................6,19,22

28 USC § 994.........................................6,22

28 USC § 2255.........................................1,3

Constitutional Provisions

US Const. Amend. V....................................3,11

US Const. Amend. VI....................................17

US Const. Amend. XIV................................23,24

US Const. Articles III..............................11,12

Sentencing Guidelines

USSG § 2G2.1..........................................9,11

USSG § 6A1.3...........................................12

USSG Manual supp. App. C. Amend 664 (2004)...............9

Other Authorities

Alan Vinegrad, The New Federal Sentencing Law,

15 Fed. Sent'g Rep 310 (June 2003)...............9


Chris Guthrie et al., Blinking on the Bench:

How Judges Decide Cases, 93 Cornell L Rev 1 (2007).5


Edward R. Becker, Insuring Reliable Fact Findings in

Guidelines Sentencing: Must the Guarantees of the
Confrontation and Due Process Clauses Be Applied?,

           22 Cap U L Rev 1 (1993).....................12


Jeffrey S Parker & Michael K Block, The Sentencing
           Commission, PM (Post-Mistretta): Sunshine or Sunset?
           27 Am Crim L Rev 289, 291 (1989)...................20


John Manning, Separation of Powers as Ordinary
           Interpretation, 124 Harv L Rev 1939
(2011).................18


Michael M O'Hear, Explaining Sentences,

           36 Fla St U L Rev 459 (2009)...............5


Sen. Alan Specter & Linda Dale Hoffa, A Quiet but
Growing Judicial Rebellion Against Harsh Sentences For
Child Pornography Offenses -- Should the Laws Be Changed?
The Champion (Oct. 2011)................................9,23


Stephanos Bibas, Plea Bargaining Outside the Shadow
of Trial, 117 Harv. L. Rev. 2463 (2004)....................5


Troy Stabenow, Deconstructing the Myth of Careful Study:]
A Primer on the Flawed Progression of the Child
Pornography Guidelines (Jan 1, 2009).......................8


US Sentencing Commission, Annual Report (2010)............11

US Sentencing Commission, 2010 Sourcebook of

    Federal Sentencing Statistics...................6,23


US Sentencing Commission, Report to the Congress:

    Sex Offenses Against Children (June 1996)..........8


US Sentencing Commission, The History of the Child

    Pornography Guidelines (Oct. 2009)...............7,8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF FLORIDA

GAINESVILLE DIVISION

UNITED STATES OF AMERICA /

     v.               /      Case No. <u>1:09-cr-00030-SPM-GRJ-1</u>

KEITH EDWARD OLMEDA    /

_____/

DEFENDANT'S MOTION UNDER 28 USCS 2255 TO VACATE

SET ASIDE, OR CORRECT SENTENCE

Comes Now Keith Olmeda (the Defendant), pro-se,
respectfully filing with this Honorable Court his Memorandum
in Support of his Motion filed under 28 USCS 2255.

DEFENDANT'S MEMORANDUM OF LAW AND STATEMENT OF FACTS IN

SUPPORT OF HIS MOTION FILED UNDER TITLE 28 USCS 2255

### OVERVIEW OF THE CASE

In July 2009, while Defendant was incarcerated, former
girlfriend Tiffany Wood was clearing out items from the
residence they shared together when she located a camera in a
closed bag in the shed. Wood's intention was to keep the
camera for herself. She turned the camera on and found ten
videos saved onto its memory card. She watched the videos and
then contacted the Alachua County Sheriff's office (ASO) about
them and "what she believed to be children being sexually
molested"; she did not identify the type of conduct or even

/

the gender of the children. Deputy Heather Phillips, an ASO investigator, visited Wood later that day (presumably July 23rd, 2009) and Wood claimed to Phillips "the videos to be child pornography because she saw two naked kids in the first video and heard [the Defendant's voice] in the background"; and the children "were acting immature and she noticed they did not have any breasts or any womanly characteristics". No warrant was sought by Phillips but she did retrieve from Woods the camera and its memory card ("the devices"). The next day (presumably July 24th, 2009), Phillips, still acting without a warrant, downloaded the videos from the memory card with the assistance of an unknown/unnamed ASO "forensic examiner" and viewed them. A week after the day Phillips took possession of the devices and after she had already accessed, retrieved and viewed their content, she requested --with the assistance of FBI Special Agent Haunseman-- a federal search warrant to search them. In her affidavit in support of the search warrant, Phillips reported the statements Wood made and admitted that she was requesting the warrant after she had taken possession of the devices and after she had accessed/retrieved and watched the videos. The warrant was issued on July 30th, 2009.

The videos appear to have been made on 5 different dates and based on them the Grand Jury returned a five count indictment against the Defendant (one count for each date) on September 23rd, 2009. All five counts were under Title 18 USCS 2251(a) (production of child pornography). The defense counsel did not seek to suppress the evidence (neither the devices nor the videos) and eventually the Defendant plead guilty. At

sentencing the 2009 Guidelines were used and Defendant received no benefit from his plea but consecutive statutory maximum sentences for each charge (i.e., a total of 150 years of imprisonment) and lifetime supervised release.

Defendant's sentence was affirmed on February 23rd, 2011 by the Court of Appeals for the Eleventh Circuit. Defendant now timely files with this Honorable Court his motion and memorandum in support under Title 28 USCS 2255.

ISSUES AND SUPPORTING ARGUMENTS TOGETHER WITH
POINTS AND AUTHORITIES OF LAW AND SUPPORTING FACTS

I. GROUND ONE: Defendant asserts that he was denied due process at sentencing in violation of the Fifth Amendment.

[1.] The United States Sentencing Guidelines are decisive in the federal criminal sentencing process, although they are "advisory".

The United States Sentencing Guidelines have continuing significance in federal sentencing even though they are indisputably advisory. See United States v. Booker, 543 US 220 (2005) exising mandatory nature of Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (1984)(creating the United States Sentencing Commission). The Booker command to "consider" the Guidelines renders them as essential to and determinative of a sentence as they were pre-Booker. United States v. Irey, 612 F.3d 1160, 1217, En Banc (11th Cir., 2010); United States v. Henry, 472 F.3d 910, 922 (DC Cir. 2007)(Kavanaugh, J., concurring)(noting that "current federal sentencing practices may be in tension with the

3

Constitution... because the current system - in practice - works a lot like the pre-Booker system"). Indeed, Justice Scalia made the same point in his dissent to Booker's remedial opinion. See 543 US at 311-13 (predicting that Booker's remedy would create de facto mandatory Guidelines).

To keep sentencing judges from slipping back into the mandatory guideline regime that it declared unconstitutional, the Supreme Court consistently reminds them that the Guidelines cannot be presumed reasonable. Rita v United States, 551 US 38, 50 (2007)("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."); Gall v. United States, 552 US 38, 50 (2007)(reiterating that sentencing courts "may not presume that the Guidelines range is reasonable"); Nelson v. United States, 555 US 350, 129 S Ct 890, 892 (2009)("The Guidelines are not only not mandatory on sentencing courts; they are also not presumed reasonable.").

Nonetheless, the method for determining a  sentence anchors a court to the Guidelines calculation far more than other factors. The Guidelines range acts as the "initial benchmark" in crafting a sentence. Gall, 552 US at 49. In the Eleventh Circuit, a sentencing court [practically] follows a two-step process: first it must correctly calculate the advisory Guidelines range, and then it must consider the relevant 18 USC § 3553(a) sentencing factors (and rule on any departure motions). United States v. Martin, 455 F.3d 1227, 1236 (11th Cir., 2006). In practice --although recent precedent directs courts to guard against it-- it is often the case that the Guidelines calculation is the basis for the

4

sentence. See Michael M. O'Hear, Explaining Sentences, 36 Fla. St. U. L. Rev. 459, 473-74 (2009)(explaining that the order of the steps in a decision making process --considering the guidelines before the grounds for variance-- exerts a powerful influence over the final outcome); see also Chris Guthrie et al., Blinking on the Bench: How Judges Decide Cases, 93 Cornell L. Rev. 1, 19-29 (2007)(studying judicial decisions and showing judges not immune from anchoring effects and other forms of bias); Stephanos Bibas, Plea Bargaining Outside the Shadow of Trial, 117 Harv. L. rev. 2463, 2515-519 (2004) (describing anchoring effect).

A compelling and rational reason that sentencing courts defer to a Guideline calculation despite their advisory nature is, of course, comfort in the way the Guidelines are intended to be produced and who sits on the Commission. The Commission's statutory goals are to:

(1) establish sentencing policies and practices for the Federal criminal justice system that--

(A) assure the meeting of the purposes of sentencing set forth in [the Act];

(B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences [where appropriate];

(C) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the

5

criminal justice process; and

(2) develop means of measuring the degree to which
the sentencing, penal, and correctional practices are
effective in meeting the purposes of sentencing as set
forth in section 3553(a)(2) of Title 18, US Code.

28 USC §991(b).

The Commission is a seven-person group comprised of people
appointed by the president, by and with advice of the senate,
includes at least three federal judges, and is situated in the
Judicial Branch. §991. Moreover, a significant responsibility
of the Commission is ongoing monitoring of the Guidelines and
sentencing in general, reporting back to Congress, see §§
994(o),(p),(r), and making policies and conducting training
for sentencing personnel, §§ 994a(1),(2),(9),(18),(22). The
Commission reviews tens of thousands of cases sentenced each
year in federal court. See, e.g., U.S. Sentencing Commission,
2010 Sourcebook of Federal Sentencing Statistics (explaining
2010 dataset contained documentation on 83,946 felony and
Class A misdemeanor cases sentenced between October 1, 2009,
and September 30, 2010). Although challenged as a violation of
the separation of powers doctrine, the Supreme Court
understood that Congress placed the Sentencing Commission, an
independent agency, within the Judicial Branch, "precisely
because of the Judiciary's special knowledge and expertise."
Mistretta v. United States, 488 US 361, 380 (1989). Indeed,
judicial participation on the Commission "ensures that
judicial experience and expertise will inform the promulgation
of rules for the exercise of the Judicial Branch's own
business --that of passing sentence on every criminal

6

defendant. Id. at 408.

It is the Sentencing Commission's relative expertise that compels sentencing courts to "consult the Guidelines and take them into account when sentencing." United States v. Booker, 543 US 220, 245 (2005). The weight to be given to the Guidelines, like deference to any agency determination, depends on "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Skidmore v. Swift & Co., 323 US 134, 140 (1944). Generally, the Guidelines persuasively reflect a sentence that accommodates all of the goals of sentencing. However, with respect to child pornography, the Guidelines reflect Congressional *desire* to punish more and more harshly *without* the corresponding consideration of other purposes of sentencing.

[2.] The child pornography Guidelines are flawed.

Since Defendant was sentenced in February 2010 and he filed his appeal to the Eleventh Circuit, the current iteration of the guidelines for child pornography offenses have come under increasing criticism from judges and the Sentencing Commission because they were created outside the traditional institutional role of the Sentencing Commission to accommodate increasing demands from Congress to set forth harsher penalties.

The Sentencing Commission has issued a report detailing Congress's role in developing the child pornography Guidelines. See U.S. Sentencing Commission, The History of the

7

Child Pornography Guidelines (Oct. 2009), available at
http://www.ussc/gov/general/20091030_History_Child_Pornography
_Guidelines.pdf. The child pornography guidelines have been
substantively amended nine times since 1987, most times with
significant direction from Congress. The Commission described
Congress as "uniquely" "directive" with the child pornography
guidelines, id. at 54, see also id. at 1, 6; see also U.S.
Sentencing Commission, Report to the Congress: Sex Offenses
Against Children, at 30 (June 1996), available at
http://www.ussc.gov/r_congress/SCAC.Pdf) (discussing
Commission's resistance to increasing base offense levels in
1991 and incorporating a computer enhancement that would apply
broadly in 1997). In 2003, in the Prosecutorial Remedies and O
ther Tools to End the Exploitation of Children Today (PROTECT)
Act of 2003, Pub. L. No. 108 P.L. 21, §401, 117 Stat. 650
(2003), Congress for the first time ever directly amended the
guidelines. The History of the Child Pornography Guidelines at
38. Congress commanded these harsh and continual increases in
the Guidelines ostensibly to target mass producers of child
pornography and/or repeat abusers of children --yet this class
of offenders makes up *less* than five percent of those
affected by the changes. See Troy Stabenow, Deconstructing the
Myth of Careful Study: A Primer on the Flawed Progression of
the Child Pornography Guidelines (Jan. 1, 2009), available at
http://www.fd.org/pdf_lib/child%20porn%20july%20revision.pdf.

The final round of Congressional interference into the
child pornography Guidelines has caused the greatest
criticism. A former United States Attorney for the Eastern
District of New York described the PROTECT Act as "the most

8

significant effort to marginalize the role of the Sentencing

Commission in the federal sentencing process since the

Commission was created by Congress." United States v. Dorvee,

616 F.3d 174, 184-86 (2d Cir. 2010)(quoting Alan Vinegrad, The

New Federal Sentencing Law, 15 Fed. Sent'g Rep. 310, 315 (June

2003)). Indeed, "to say that [the child pornography

guidelines] is the result of Commission data, study, and

expertise simply ignores the facts." United States v. Diaz,

720 F. Supp. 2d 1039, 1045 (ED Wis, 2010). Former Chair of the

Senate Judiciary Committee, Senator Alan Specter, and former

Chief of the Criminal Division of the United States Attorney's

Office in Philadelphia, Linda Dale Hoffa, are also now

speaking out against these unhinged guidelines. See Sen. Arlen

Specter & Linda Dale Hoffa, "A Quiet but Growing Judicial

Rebellion Against Harsh Sentences for Child Pornography

Offenders -- Should the Laws Be Changed?", The Champion (Oct.

2011)(App. 190).

     The applicable Guideline at issue, USSG §2G2.1 was not

made in the Commission's neutral endeavor to set sentencing

policy and did not use "empirical data" or "national

experience." Instead, the base offense level in §2G2.1 was

increased by five levels in 2004 --from 27 to 32-- *solely* in

response to a Congressional increase in the mandatory minimum

term of imprisonment for violation of 18 USC §2251 (production

for child pornography) under the PROTECT Act. USSG Manual

Supp. App. C amendment 664 (2004)(changing base offense level

of production of child pornography from level 27 to 32 to

ensure that 15-year mandatory minimum met)(App. 55). The

practical effect of this Congressionally mandated increase is,

at minimum, an increase of 50 months imprisonment for a defendant with no criminal history (from 70 to 121 months), to an increase of 80 months for a defendant with a Criminal History Category VI (from 130 to 210 months). See id. The increase in the base offense level is a rubber stamp to political pressure the PROTECT Act placed on the Commission.

Numerous courts now identify several problems with the child pornography guidelines that have the great potential to produce unreasonable sentences. See United States v. Riley, 655 F Supp 2d 1298 (S.D. Fla, 2009); United States v. Doktor, 2008 US Dist LEXIS 104737, 2008 WL 5334121 (MD FL, 2008); United States v. Howard, 2010 US Dist LEXIS 17740, 2010 WL 749782 (D Neb, 2010); United States v. Manke, 2010 US Dist LEXIS 3757, 2010 WL 307937 (ED Wis, 2010); United States v. Raby, 2009 US Dist LEXIS 121836, 2009 WL 5173964 (SD W Va, 2009); United States v. Burns, 2009 US Dist LEXIS 100642, 2009 WL 3617448 (ND III, 2009); United States v. McElheney, 630 F Supp 2d 886 (E.D. Tenn., 2009); United States v. Beiermann, 599 F. Supp. 2d 1087 (N.D. Iowa 2009); United States v. Phinney, 599 F Supp 2d 1037 (E.D. Wis., 2009); United States v. Stern, 590 F Supp 2d 945 (ND Ohio, 2008); United States v. Johnson, 588 F Supp 2d 997 (SD Iowa, 2008); United States v. Noxon, 2008 US Dist LEXIS 87477, 2008 WL 4758583 (D Kan, 2008); United States v. Ontiveros, 2008 US Dist LEXIS 58774, 2008 WL 2937539 (ED Wis, 2008); United States v. Hanson, 561 F Supp 2d 1004 (ED Wis, 2008); United States v. Shipley, 560 F Supp 2d 739 (SD Iowa, 2008); United States v. Baird, 580 F Supp 2d 889 (D Neb, 2008); also, United States v. Grober, 624 F.3d 592, 611 (3rd Cir., 2010)(finding no procedural error in

10

sentence to five year mandatory minimum, significantly outside
235 to 295 months advisory guideline range, based on court's
twelve-day hearing into flaws in the child pornography
guideline); United States v. Dorvee, 616 F.3d 174, 184-87 (2d
Cir. 2010)(identifying development outside the Commission's
normal process and enhancements that apply in the routine case
so that routine offenses generate guidelines ranges near the
statutory maximum which is incompatible with 3553(a)), reh'g
en banc denied (2nd Cir., 2010).

Sentencing statistics for all child pornography offenses
--not just possession-only offenses where an extreme advisory
guidelines range causes the most dissatisfaction among
District Court Judges-- demonstrate how far astray these
Guidelines have gone from a rational sentencing process. In
the 2010 fiscal year, sentences for child pornography offenses
had the highest rate of non-government sponsored below-range
sentences --42.7%. U.S. Sentencing Commission, Annual Report,
at 6 (2010), available at http://www.ussc.gov/Data_and_
Statistics/Annual_Reports_and_Sourcebooks/2010/2010_Annual_Rep
ort_Chap5.pdf. Nonetheless, even with that rate of downward
variance, the highest sentences on average were imposed for
murder, kidnapping/hostage taking, and child pornography
offenses. Id. at 4.

[3.] Deference to 2G2.1 without sufficient analysis of its
flawed history leads to sentences imposed in violation of the
Due Process protections of the Fifth Amendment.

Although the legislature may dictate the scope of
criminal sentences, judges are required and entrusted to treat
each criminal defendant as an individual. See U.S. Const. art.

11

III, §2 (setting forth case and controversy requirement for
Article III jurisdiction). Consistent with the need for
individualized sentences, courts are given great leeway in
sentencing, for example, to consider a wide range of out-of-
court sources "to guide their judgment toward a more
enlightened and just sentence." Williams v. New York, 337 US
241, 251 (1949)(finding such practices were historically
permitted and did not violate Due Process protections). Due
process and other constitutional concerns provide the only
limitation at sentencing. See Townsend v. Burke, 334 US 736,
741 (1948)(finding sentence based on "assumptions concerning
[defendant's] criminal record which were materially untrue was
inconsistent with due process of law"); USSG §6A1.3
(permitting court to consider relevant information "provided
that the information has sufficient indicia of reliability to
support its probable accuracy"); Edward R. Becker, Insuring
Reliable Fact Finding in Guidelines Sentencing: Must the
Guarantees of the Confrontation and Due Process Clauses Be
Applied?, 22 Cap. U. L. Rev. 1 (1993)(explaining importance of
judicial fact-finding in sentencing and setting forth a
framework to analyze and resolve due process issues that
arise). Indeed, the entire sentencing process "must satisfy
the requirements of the Due Process Clause." Garner v.
Florida, 430 US 349, 358 (1977).

If a District Court begins a sentencing proceeding using
an initial benchmark which is seriously flawed, its influence
on the analysis violates a defendant's due process right to a
fair sentencing proceeding --from beginning to end. The
inquiry is: "what process is due[?]" Morrissey v. Brewer, 408

US 471, 481 (1972). Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Cafeteria & Restaurant Workers v. McElroy, 367 US 886, 895 (1961)(internal quotation omitted). Instead, due process is flexible and calls for "such procedural protections as the particular situations demands." Morrissey, 408 US at 481. Mathews v. Eldridge set forth a three-part inquiry to consider:

> [f]irst, the private interest that will be affected by the official action; second, the risk of probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 US 319, 355 (1976).

This test compels the finding that failure to acknowledge problems with the Guidelines and properly analyze individual circumstances in child pornography cases offends due process.

First, a criminal defendant's interest in avoiding an unfair deprivation of liberty is a private individual's most essential concerns. Indeed, Justice Scalia described criminal sentencing as the "application of the ultimate governmental power [against a private individual], short of capital punishment." Mistretta v. United States, 488 US 361, 413 (1989)(Scalia, J., dissenting). Here, Defendant's significant interest is his liberty --avoiding an additional 116 years of incarceration. Had Defendant been sentenced before the arbitrary increase in the guidelines in 2004, his exposure

would have been 405 months; after 2004 this changed to "Life" and Defendant received 1800 months (due to how 5G1.2(d) was applied --see Ground Three below). This is a 1395 month (or more than 116 years) difference.

Certainly, if a sentence prior to the PROTECT Act of 2003 was an accurate reflection of the §3553(a) factors, the arbitrary increase in the Guidelines solely on the basis of Congressional will is arbitrarily imposed and results in a sentence greater than necessary to achieve the goals of sentencing under 3553(a). If a defendant properly places a record before the District Court that a guideline is non-empirically based and reactive to Congress, due process compels the court to consider the argument in its sentencing analysis. Such consideration adds significant value to the sentencing process and the reliability of the outcome. Mathews v. Eldridge, 424 US at 335. Moreover, where a guideline has now been thoroughly deconstructed by the Sentencing Commission itself and the Court of Appeals under which the sentencing court sits, there is little additional burden on a judge to engage in a more rigorous analysis. While, at sentencing, the Court was not provided by defense counsel with Troy Stabenow's report on the history of the child pornography guidelines, the Court now/today has more precedential support for Defendant's argument that the child pornography guidelines are flawed. All three Mathews factors demonstrate that more process was due here and that the failure to consider that the child pornography guidelines are not empirically based violated Defendant's due process rights.

The sentence also affects Defendant's substantive due

14

process rights. The due process clause protects liberty interests that are "fundamental" and were "traditionally protected by our society" or "'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Michael H. v. Gerald D., 491 US 110, 122 (1989)(quoting Snyder v. Massachusetts, 291 US 97, 105 (1934)(Cardozo, J.)). Freedom from bodily restraint is at the core of the "liberty" interest protected by the Due Process Clause of the United States Constitution. See Meyer v. Nebraska, 262 US 390, 399 (1923)(setting forth cases defining liberty interest beyond freedom from bodily restraint). Judges must be particularly vigilant to protect this essential interest. Ignoring significant problems with and anchoring the sentence in the child pornography guidelines resulted in a fundamentally unfair sentence that unduly restrains Defendant's most fundamental liberty interest beyond the purposes of sentencing. This Court may correct these fundamental errors through the §2255 motion.

[4.] This Court should grant Defendant's 2255 motion to correct the constitutional flaws in his sentence.

Considering this sea-change in judicial understanding of the background of the child pornography guidelines and how it should play into sentencing, a judge in the Southern District of New York who had sentenced a defendant within the child pornography guidelines in May 2008 recently granted §2255 relief and vacated that sentence. Gordon v. United States, Civ. No. 10-5366, 2011 WL 2638133 (SDNY, July 1, 2011)(Wood, J.). The Court explained that before 2009-10, there was little examination of the history and development of the child

/5

pornography guideline. However, the court was persuaded by the
Sentencing Commission's report and the Second Circuit's
decision, United States v. Dorvee, that flaws in the
guidelines should be considered at sentencing. 2011 WL
2638133, at 3. The judge found she had relied on incorrect
information at sentencing which was a fundamental defect
resulting in a miscarriage of justice. 2011 WL 2638133, at 3
(explaining 2255 allows a collateral attack on a final
judgment if an error of fact occurred, and if that error
constitutes a "fundamental defect which inherently results in
a complete miscarriage of justice" (quoting Hill v. United
States, 368 US 424, 428 (1962). In vacating the sentence, the
court explained:

> Whether or not I ultimately depart further from the
> child pornography Guidelines, essential tenants of due
> process require that I sentence Petitioner on the basis
> of accurate information, and with an appreciation for
> the fact that I have greater discretion to depart from
> the child pornography Guidelines than I believed I had
> at the time Petitioner was sentenced.

Id. at *5.

Such a result is warranted here. This Court now has
decisions and opinions from several District and Circuit
Courts and a report from the Sentencing Commission
demonstrating the flaws in the child pornography guidelines.
Due process compelled careful consideration of the flawed
guidelines before using them as the foundation of Defendant's
sentence.

16

II. GROUND TWO: Defendant asserts that reliance on the current child pornography guidelines, created by the PROTECT Act, violates the Separation of Powers Doctrine.

[1.] The United States Constitution's separation of powers between the three branches protects individual liberty.

The United States Constitution divides the powers of government among three branches: the Executive, Legislative, and Judiciary. See U.S. Const. art I, §1, art. II §1, art. III §1. Congress and the Executive are elected by the people and represent the majority. The Judiciary, in the federal system, is appointed by the President with advice and consent of the Senate and protects individual interests by determining if governmental acts violate the Bill of Rights. U.S. Const. art. II, §2, art. III; see Blakely v. Washington, 542 US 296, 305-06 (2004)(describing Sixth Amendment right to jury trial as means to ensure the people's control in the judiciary and explaining that "Apprendi carries out this design by ensuring that the judge's authority to sentence derives wholly from the jury's verdict"); Apprendi v. New Jersey, 530 US 466 (2000). On the other hand, sometimes the interaction of all three branches best protects individual liberty. See United States v. Brown, 381 US 437, 443 (1965)("[I]f a given policy can be implemented only by a combination of legislative enactment, judicial application, and executive implementation, no man or group of men will be able to impose its unchecked will"). The Constitution "enjoins upon its branches separateness but interdependence, autonomy but reciprocity." Youngstown Sheet & Tube Co. v. Sawyer, 343 US 579, 635 (1952)(Jackson, J.,

17

concurring).

Criminal sentencing requires participation by all three branches. See Chapman v. United States, 500 US 453, 467 (1991); Mistretta v. United States, 488 US 361, 364 (1989)(explaining "the scope judicial discretion with respect to a sentence is subject to congressional control"). Congress determines the scope of criminal statutes. U.S. Const. art. I, §8. The Executive determines who to charge. U.S. Const. art. II, §3. The Judiciary acts as the ultimate safeguard of liberty, by only evaluating individual "cases" and "controversies." U.S. Const. art. III, §2. Thus, Article III "serves both to protect 'the role of the independent judiciary within the constitutional scheme of tripartite government,' and to safeguard litigants' right to have claims decided before judges who are free from potential domination by other branches of government.'" Commodity Futures Trading Com. v. Schor, 478 US 833, 848-49 (1986)(citations omitted).

"The Framers regarded the checks and balances that they had built into the tripartite Federal Government as a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." Buckley v. Valeo, 424 US 1, 122 (1976). Separation-of-powers challenges to particular government arrangements take two approaches -- functionalist or formalist. John Manning, Separation of Powers as Ordinary Interpretation, 124 Harv. L. Rev. 1939 (2011). A functionalist approach does not contemplate "a complete division of authority between the three branches," Nixon v. Adm'r of Gen. Svcs., 433 US 425, 443 (1977) and rejects "bright-line rules," instead looking to the "practical

consequences" of a challenged law "in light of the larger concerns that underlie Article III." Schor, 478 US at 857. By contrast, formalists take a standard textualist approach, "generally presuppos[ing] that the Constitution draws sharply defined and judicially enforceable lines among the three distinct branches of government." 124 Harv. L. Rev. at 1943.

[2.] Sentencing Commission, as enacted, passes constitutional muster.

The United States Sentencing Commission represents a unique merger of the three branches in criminal sentencing. It is an independent agency created by Congress that is housed in the Judiciary and includes judges, and also includes the Attorney General, or his designee, as an ex officio, non-voting member. 28 USC §991(a). In Mistretta v. United States, the Commission held up against a separation-of-powers attack. 488 US 361 (1989):

> We are drawn to this conclusion [that there is no separation-of-powers violation] by one paramount consideration: that the Sentencing Commission is devoted exclusively to the development of rules to rationalize a process that has been and will continue to be performed exclusively by the Judicial Branch. In our view, this is an essentially neutral endeavor and one in which judicial participation is peculiarly appropriate. Judicial contribution does enlist the resources or reputation of the Judicial Branch in either the legislative business of determining what conduct should be criminalized of the executive business of enforcing the law. Rather, judicial participation on the Commission ensures that judicial

experience and expertise will inform the promulgation
of rules for the exercise of the Judicial Branch's own
business --that of passing sentence on every
criminal defendant. To this end, Congress has
provided, not inappropriately, for a significant
judicial voice on the Commission.

488 US at 407-08.

Thus, the Court analyzed the Sentencing Commission using a
broad functionalist approach. Mistretta, 488 US at 380 ("In
applying the principle of separated powers in our
jurisprudence, we have sought to give life to Madison's view
of the appropriate relationship among the three coequal
branches."). The Court rejected Justice Scalia's
characterization of the Sentencing Commission as "a sort of
junior-varsity Congress." See id. at 427 (Scalia, J.,
dissenting). The Court also rejected the defendant's charge
that aspects of the Commission diminished the independence of
the judiciary or lent judicial prestige and an aura of
judicial impartiality to policymaking and political work. Id.
at 405. Indeed, both the Sentencing Reform Act and Mistretta
are "devoid of any suggestion that the Commission is intended
or permitted to be a forum for expressing political
preference." Jeffrey S. Parker & Michael K. Block, The
Sentencing Commission, P.M. (Post-Mistretta): Sunshine or
Sunset?, 27 Am. Crim. L. Rev. 289, 291 (1989). When the
Commission undertakes its carefully proscribed role, it acts
within constitutional bounds and its thorough work deserves
the deference both sentencing and reviewing courts pay it. See
Ground One, supra, [at pp. ~~6~~5-~~6~~7].

[3.] The PROTECT Act violates the separation-of-powers doctrine because it surreptitiously encroaches on judicial independence.

The PROTECT Act violates the separation-of-powers doctrine because it encroaches on the judicial function of the Sentencing Commission. Of course, "the scope of judicial discretion with respect to a sentence is subject to congressional control." Mistretta v. United States, 488 US 361, 364 (1989). Congress has created a statutory range for child pornography offenses -- in the case of production, 15 to 30 years, 18 USC §2251(e). "Congress can constitutionally eliminate all discretion in sentencing judges by establishing mandatory sentences." United States v. Dumas, 934 F.2d 1387, 1389-90 (6th Cir. 1990); see also United States v. Arrelucea-Zamudio, 581 F.3d 142, 151 (3rd Cir., 2009)("In sum, a Guideline is not a statute. If Congress does not want district courts to exercise their judicial function to sentence defendants based on the facts and circumstances of each case under the guidance of the §3553(a) factors, then it has the power to amend the pertinent statute."). Again, Congress has created mandatory minimum and maximum ranges for child pornography offenses.

The question, then, is what level of continuing interference with the Sentencing Commission with respect to its role in structuring the Guidelines crosses the line to become a constitutional violation? The PROTECT Act's explicit directives to continue increasing offense levels significantly changed the child pornography guidelines without any of the concomitant and expected deliberate amendment process.

Moreover, for the first time ever, despite a clear statutory
structure for the Commission to rationalize and create the
Guidelines, see 28 USC §§ 991-994, it directly amended them.
Pub. L. No. 108 P.L. 21, §401, 117 Stat. 650 (2003); The
History of the Child Pornography Guidelines, at 38. Although
Congress may reject or accept any particular guideline,
Mistretta, 488 US at 393-94, it has delegated to another group
the power to create them. The Sentencing Commission has lost
its independence and the delicate balance that the Mistretta
Court ruled met the constitutional commend for a separation of
powers.

Congress' continued interference with the Commission is a
covert encroachment that violates the separation of powers
doctrine. Many sentencing judges mistakenly believe the
sentencing guidelines for child pornography offenses, like the
rest of the guidelines, are informed by judicial practice
across the nation and reflect a sentence that generally
accounts for the 3553 factors. In fact, these guidelines
reflect political will. As the Court in Mistretta warned: "The
legitimacy of the Judicial Branch ultimately depends on its
reputation for impartiality and nonpartisanship. That
reputation may not be borrowed by the political Branches to
cloak their work in the neutral colors of judicial action."
488 US at 407; see also Bowsher v. Synar, 478 US 714, 776
(1986).(White, J., dissenting)(defining role of Court in
separation of powers cases as limited to determining whether a
challenged government arrangement "so alters the balance of
authority among the branches of government as to pose a
genuine threat to the basic division" of power). The child

pornography guidelines are not the neutral endeavor they appear to be. Their continued decisiveness at sentencing results in the imposition of sentences in violation of the United States Constitution.

While Congress will not likely realign child pornography sentencing with the goals of criminal sentencing, 18 USC §3553(a), it is the solemn responsibility of "an independent judiciary armed with the relevant information [to] continue to provide the protection necessary to assure that no sentence for these offenses will be 'greater than necessary' as the law requires." Sen. Arlen Specter & Linda Dale Hoffa, A Quiet but Growing Judicial Rebellion Against Harsh Sentences for Child Pornography Offenses -- Should the Laws Be Changed?, The Champion, at 4 (Oct. 2011). The current sentencing guidelines for child pornography offenses, constrained by the PROTECT Act, were created in violation of the constitutional mandate for separation of powers. Defendant's 150 year sentence was grounded in this unconstitutional scheme and must be vacated.

III. GROUND THREE: Defendant asserts that he was denied Due Process and Equal Treatment/Protection under the Fifth and Fourteenth Amendments.

A "Life" sentence is defined as 470 months by the Commission (USSC, 2010 Sourcebook of Federal Sentencing Statistics 161 (2010)), which the Courts do acknowledge; e.g., United States v. Russell, 662 F.3d 831, 853 (7th Cir., 2011)("...the sentencing Commission equated life imprisonment with a term of 470 months."). In United States v. Jensen, 493 F.3d 997, 1000 (8th Cir., 2007), the government attests

23

"equating 'Life' with a term of 470 months imprisonment".
Finally, the Eighth Circuit in United States v. Selby, 184 Fed
App'x 589, 591 (8th Cir., 2006), appears content even with a
favorable 405 month "Life" sentence.

Although "Life" is acknowledged as 470 months whenever
considering downward departures, the same is not applied when
sentencing all other defendants, thus creating an unwarranted
disparity between the "Life" sentence of the latter (which is
defined as "as-much-as-statutorily-possible") with that of the
former (which is defined as 470 months). Due to this
discriminatory treatment, in many cases --and due to the way
5G1.2(d) is applied "to produce a combined sentence equal to
the total punishment"-- defendants end up with sentences
significantly exceeding 470 months of imprisonment, e.g., see
11,520 months (960 years) in United States v. Falgout III, 325
Fed.Appx.775 (11th Cir., 2009); 10,140 months (845 years) in
Weiss v. Yates, 2008 US Dist LEXIS 100901 (MD FL, 2008); 4,800
months (400 years) in United States v. Poole, 2011 US App.
LEXIS 21320 (4th Cir., 2007); 3,960 months (330 years) in
United States v. Lewis, 594 F.3d 1270 (10th Cir., 2010);
etc.).

The Fifth and Fourteenth Amendments to the US
Constitution guarantee Due Process and Equal Treatment of
similarly situated criminal defendants. Since the total
punishment for "Life" has been defined as 470 months by the
Commission and is used as such by the courts to sentence
defendants who fall under the "Life" Guideline --with the
government not only agreeing to this but even demanding it
(see United States v. Selby above)-- the *same* should be

24

extended to Defendant.


## CONCLUSION

Based on the foregoing arguments and authorities, Defendant requests this Honorable Court to vacate his conviction and sentence on all counts, or in the alternative reset the case on the Court's calendar, or in the alternative, set the petition for an evidentiary hearing.


Respectfully Submitted,

Keith Olmeda

CERTIFICATE OF SERVICE

I, KEITH OLMEDA, HEREBY CERTIFY pursuant to 28 USC §1746 under penalty of perjury that a true and correct copy of this request was placed in the hands of prison officials with first class postage prepaid for mailing through the institution's mail system on this 15th day of May, 2012, and was served upon AUSA Francis Todd Williams, 300 E University Ave, Gainesville, FL 32601.

Signed this 15th day of May, 2012 by:

_Keith E Olmeda_

Keith Olmeda

26

Keith E. Olmeda
20651-017
U.S.P. Tucson
P.O. Box 24550
Tucson, AZ. 85734

7010 2780 0000 1332 9712



CERTIFIED MAIL™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE



TUCSON PSDC AZ ZIP85

WED 16 MAY 2012

BL

⇔20651-017⇔
Clerk Of The Court
401 SE 1ST AVE
Federal Building room 243
Gainesville, FL 32601
United States