IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                      CASE NO: 1:09-CR-30-SPM/GRJ

KEITH EDWARD OLMEDA
_____/

## GOVERNMENT'S ANSWER TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT CONVICTION, JUDGMENT AND SENTENCE PURSUANT TO 28 U.S.C. § 2255

**COMES NOW THE UNITED STATES OF AMERICA**, by and through the undersigned Assistant United States Attorney and files this answer pursuant to Court Order dated May 23, 2012, (Doc. 45), in response to Defendant's pro se Motion to Vacate Conviction, Judgment and Sentence Pursuant to 28 U.S.C. § 2255 (hereinafter Motion to Vacate) (Doc. 44); and moves this Court to deny the defendant's motion. The United States would rely on the following:

I. STATEMENT OF CASE

    A.    **PROCEEDINGS AND DEFENDANT'S USE OF OTHER FEDERAL REMEDIES.**

Defendant Keith Edward Olmeda was charged by Indictment on September 23, 2009, with five counts of production of child pornography, in violation of Title 18, United States Code, Sections 2251(a) and 2251(e). He entered a guilty plea to all five charges pursuant to a written plea agreement with the Government on November 24,

1

2009. (Doc. 22). His Presentence Investigation Report (hereafter PSR) was completed and filed February 17, 2010. (Doc. 38). On February 1, 2010, he was sentenced to 30 years imprisonment as to Counts 1 through 5, said terms to run consecutively (total of 150 years), followed by lifetime supervised release with multiple special and standard conditions of supervision, and a $500.00 Statutory Monetary Assessment. (Doc. 27). The Defendant appealed his sentence, and his appeal was denied by an unpublished opinion issued February 23, 2011. *United States v. Olmeda*, 415 Fed.Appx. 193 (11th Cir. 2011). On May 21, 2012, Defendant Olmeda filed a *pro se* Motion to Vacate his sentence pursuant to Title 28, United States Code, Section 2255. (Doc. 44).

### B.   STATEMENT OF FACTS.

The facts set forth in this Memorandum were obtained from the Statement of Facts entered at the time of the Defendant's guilty plea on November 12, 2009 (Doc. 19) (hereinafter SOF), and the facts set forth in the PSR filed February 17, 2010 (Doc. 38) (hereinafter PSR).

This case stems from a local investigation in Gainesville, Florida following a child's disclosure to his custodial father that his mother's boyfriend sexually assaulted him and his three sisters. On May 18, 2009, defendant Keith Olmeda was arrested in Alachua County on state charges related to capital sexual battery on four children under twelve and lewd and lascivious contact with a child under 12. Two of the children had stated to the Florida Department of Children and Families (hereinafter DCF) investigators on video tape that they were sexually abused, together and separately, while in Olmeda's care at various locations in Alachua County. At least one child also stated he was shown

pornographic images by Olmeda. These offenses occurred between 2005 and 2007. During an interview with law enforcement officers, defendant Olmeda admitted limited sexual contact with three of the children.

In July 2009, defendant Olmeda's former girlfriend, Tiffany Wood located defendant Olmeda's camera in a residence they shared together in Port Orange, Florida. She intended to keep the digital camera/camcorder for herself. She noticed there was a memory card in the camera and she turned the camera on and viewed ten videos saved onto the memory card disk. She watched the videos and observed children being sexually abused by Keith Olmeda. She recognized Olmeda's voice and portions of his body which appear in several of the videos. She contacted the Alachua County Sheriff's Office (hereinafter ASO).

An ASO investigator drove to Port Orange later that day and met with Ms. Wood. With her consent, the investigator retrieved the camera and memory card directly from Ms. Wood.

A federal search warrant was obtained in Alachua County to search the devices in state law enforcement custody. A forensic examination resulted in the identification of numerous video files depicting children engaged in sex with an adult male as well as themselves. The children were between five and ten years of age.

The video files were dated using metadata associated with the creation of each file by the video camera. The camera and memory card were manufactured in China. The video images on the memory card were analyzed by a computer forensics expert. The videos each include sexual acts involving the children occurring on five separate dates.

Defendant Olmeda's body could be seen in the videos, and his voice could be heard directing the children. The children were identified by their biological mother and other relatives. The children were all younger than 12 years old in the videos. Two eyewitnesses identified the defendant in the videos by his voice and physical characteristics. The children referred to the defendant as "Dad" in the videos.

The locations where the videos were created were identified as being in Alachua County, Northern District of Florida. The five dates and corresponding video file names are described as follows:

| August 11, 2006 | MPEG0063.ASF and MPEG0061.ASF |
| August 19, 2006 | MPEG0067.ASF |
| August 26, 2006 | MPEG0069.ASF |
| September 3, 2006 | MPEG0071.ASF, MPEG0073.ASF, and MPEG0076.ASF |
| September 10, 2006 | MPEG0080.ASF |

## II.  DEFENDANT'S CLAIMS.

Defendant Olmeda appeals his sentence based on three constitutional arguments. First, he claims he was denied due process at sentencing in violation of the Fifth Amendment. Second, he claims that the District Court's reliance on the child pornography guidelines, created by the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act (hereinafter PROTECT Act), violated the Separation of Powers Doctrine. Third, he claims his sentence violated his right to due

process and equal protection under the Fifth and Fourteenth Amendment.

The Government refutes each of the Defendant's claims. First, the Defendant failed to raise these arguments at sentencing or on direct appeal, and having failed to raise them they have been forfeited. Second, assuming *arguendo* the claims have not been forfeited, the legal arguments upon which the claims are based fail as a matter of law.

### III.   GOVERNMENT'S RESPONSE AND MEMORANDUM OF LAW.

#### A.   FORFEITURE OF CLAIMS.

"Where a petitioner does not bring a claim on direct appeal, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." *United States v. Munoz*, 143 F.3d 632, 637 (2d Cir.1998). However, "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

The Sixth Amendment right to counsel is the right to effective assistance of counsel during criminal proceedings, which includes the defendant's decision to plead guilty. *Padilla v. Kentucky*, 130 S.Ct. 1473, 1480-81 (2010); *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The "underlying purpose" of the Constitution's guarantee of effective assistance of counsel is derived from the axiom that "[t]ruth is best discovered by powerful statements on both sides of the question." *United States v. Cronic*, 466 U.S. 648, 655 (1984) (quoting Kaufman, Does the Judge Have a Right to Qualified Counsel?, 61 A.B.A.J. 569, 569 (1975)). In other words, "[t]he very premise of

our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Id.* (citing *Herring v. New York*, 422 U.S. 853, 862 (1975). Therefore, "the benchmark for judging any claim of ineffective assistance of counsel" is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 688 (1984); see also *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984).

In order to avoid frivolous claims made by defendants dissatisfied with their judgment and aided with the benefit of hindsight, there is a strong presumption that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The burden is therefore on the accused to demonstrate the denial of effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984). To establish ineffectiveness of counsel that is grounds for vacating a conviction the defendant must prove that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694. "There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Thus, if the defendant fails to show that he is prejudiced by the alleged errors

6

of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient, and vice versa. See *Coulter v. Herring*, 60 F.3d 1499, 1504 n.8 (11th Cir. 1995).

For performance to be deficient, it must be established that in light of all the circumstances counsel's performance was outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690. A reasonable attorney might take any number of courses of action, and in doing so there is an expected margin of human error. Therefore, there is no pattern standard for reasonable professional assistance, "omissions [of counsel] are inevitable," and in reviewing counsel's decisions "the issue is not what is possible or [even] 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). The defendant must "prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Id.* (citing *Strickland*, 466 U.S. at 688). This burden of persuasion, though not insurmountable, is a heavy one. See *Id.* at 1314 (citing *Kimmelman v. Morrison*, 477 U.S. 365 (1986)).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts must avoid second-guessing counsel's performance. *Chandler*, 218 F.3d at 1314 (quoting *Strickland*, 466 U.S. at 689; *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995)). Courts must also "'indulge [the] strong presumption' that counsel's performance was reasonable," and make every effort "to eliminate the distorting effects of hindsight ... and to evaluate the conduct from counsel's perspective at the time." *Id.* (quoting

*Strickland*, 466 U.S. at 689-90); *Strickland*, 466 U.S. at 689. Thus, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound...strategy." *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)) (emphasis added).

If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment. See *Chandler*, 218 F.3d at 1314-15 n.15. The presumption afforded to counsel's performance "is not . . . that the particular defense lawyer . . . focused on and, then, deliberately decided to do or not to do a specific act." *Id.* Rather, the presumption is "that what the particular defense lawyer did, were acts that some reasonable lawyer might do." *Id.* Moreover, "[t]he reasonableness of a counsel's performance is an objective inquiry." *Id.* at 1315. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action his counsel did take." *Id.* To uphold a lawyer's strategy, a court "need not attempt to divine the lawyer's mental processes underlying the strategy." *Id.* at 1315 n.16, and finally, "[n]o absolute rules dictate what is reasonable performance for lawyers." *Id.* at 1317.

Even if the defendant is able to overcome the strong presumption that his counsel's conduct was reasonable and show that it was in fact deficient, the prejudice component of *Strickland* requires the defendant to "show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would be different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The Supreme Court

has further established that this (prejudice) analysis should not focus solely on the outcome, but must take into account whether the result of the proceedings is "fundamentally unfair or reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). That is to say, the right to effective assistance of counsel does not exist to make sure that a defendant will receive the outcome he or she desires, but to ensure that the adversarial process produces the true outcome. The right exists to ensure that the process is fundamentally fair in light of all of the circumstances and is conducive to the revelation of truth regarding guilt and innocence and to the administration of justice. In light of these principles and presumptions, the Eleventh Circuit has recognized that "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Waters*, 46 F.3d at 1511; see also *Chandler*, 218 F.3d at 1313.

Defendant Olmeda failed to raise the constitutional challenges upon which his Section 2255 motion is based on direct appeal. He has failed to demonstrate cause for this procedural default or prejudice resulting therefrom. On direct appeal, he argued he was not warned that the district court could impose consecutive sentences for his five counts of conviction. *See Olmeda*, 415 Fed.Appx. at 194. His three new constitutional claims have been forfeited. These new claims have no direct appellate support or are adversely settled as a matter of law, demonstrating that his trial and appellate counsel made "significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Simply put, there is case law that demonstrates that the constitutional arguments raised by the Defendant would fail. Therefore, an argument by the Defendant that he

9

received ineffective assistance of trial and appellate counsel because his attorneys failed to raise these issues would fail, because a reasonable attorney would not have raised such constitutional issues.

### B. DEFENDANT'S CLAIMS.

#### 1. FIFTH AMENDMENT DUE PROCESS CLAIM.

Defendant Olmeda first claims he was denied due process at sentencing in violation of the Fifth Amendment. (Doc. 44 - Pg 26). He argues that the United States Guidelines are decisive rather than advisory, and that the child pornography Guidelines themselves are constitutionally flawed.

Defendant Olmeda was sentenced following the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005). In *Booker*, the Court held that 18 U.S.C. §3553(b)(1), a provision *requiring* sentencing courts to impose a sentence within the applicable Guidelines range, was unconstitutional. *Id.* (emphasis added). However, the Court held that section 3553(a) remains in effect. *Id.* at 765. As a result of the *Booker* decision, the sentencing Guidelines are now advisory. *See, United States v. Rita*, 127 S.Ct. 2456 (2007) (appellate court may, but is not required to presume that a sentence that is within the appropriately-calculated Sentencing Guideline is reasonable). Indeed, Defendant Olmeda concedes in his motion that the Guidelines are in fact advisory. (Doc. 44 - Pg 26).

Regardless of this concession, Olmeda argues that the child pornography Guidelines themselves are constitutionally flawed, and therefore reliance on them as a

benchmark for calculating his sentence violated his Due Process rights under the Fifth Amendment. (Doc 44 - Pg 34). To demonstrate the alleged flaw in the Guidelines, Olmeda relies on a paper by federal public defender Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (Jan. 1, 2009), and cases that have cited it. (Doc 44 - Pgs 31-35).

In *United States v. Dean*, 635 F.3d 1200 (11th Cir. 2011), the Eleventh Circuit recently addressed a similar claim in a case involving a defendant convicted for the production of child pornography. The Court stated:

> Dean's reliance is misplaced. Stabenow's paper argues that the current Guidelines for child-pornography offenses are flawed because the severity of sentences entered against the typical downloader of child pornography, who has had no direct connection to the production of the materials or the abuse of children, has increased drastically without any "empirically demonstrated need for consistently tougher sentencing." *Id.* at 3. The cases that Dean references as having cited Stabenow's paper are similarly concerned that the first-time "typical downloader" (as opposed to a "predator" or "active abuser") may receive too harsh a sentence. *United States v. Grober*, 595 F.Supp.2d 382, 394, 396, 402 (D.N.J.2008) (finding that the Guidelines did not deserve deference in a "typical downloading case"); *see United States v. Hanson*, 561 F.Supp.2d 1004, 1011 (E.D.Wis.2008) (finding that the Guidelines did not deserve deference as applied to a typical first-time offender who shared child-pornography files on the Internet but produced none directly); *United States v. Shipley*, 560 F.Supp.2d 739, 744 (S.D.Iowa 2008) (same); *United States v. Baird*, 580 F.Supp.2d 889, 895 (D.Neb.2008) (entering a reduced sentence after finding that recent changes to the Guidelines "served to muddy the qualitative distinctions between 'mere possession' and 'distribution of child pornography,' " and that "[t]he Guidelines at issue do not adequately reflect those important distinctions in levels of culpability"); *see also United States v. Huffstatler*, 571 F.3d 620, 624 (7th Cir.2009) (citing Stabenow's article but concluding that, "while district courts perhaps have the freedom to sentence below the child-pornography guidelines based on disagreement with the guidelines, ... they are certainly not required to do so").

> In this case, however, we need not, and expressly do not, address the concerns in, or the rationale of, the Stabenow article or the cited cases. Dean is no mere downloader. He sexually abused his stepdaughter and filmed hundreds of the episodes of abuse to generate pornographic films. Not one of the sources he cites supports the argument that the Guidelines are too harsh with respect to perpetrators who assault children to produce pornography. To the contrary, Dean's stepdaughter has suffered the kind of grave harm described by our *en banc* Court in *Irey.* 612 F.3d at 1207–08.

Similar to the facts in *Dean*, Defendant Olmeda was also convicted for the production of child pornography - not against one victim, but against four. Clearly, the Eleventh Circuit's rationale in *Dean* is applicable to the case at bar. Not one of the sources Olmeda cites supports the argument that the Guidelines are too harsh with respect to perpetrators who sexually assault children to produce child pornography. Defendant Olmeda's claim fails as a matter of law based on existing Eleventh Circuit precedent.

## 2. SEPARATION OF POWERS CLAIM.

Defendant Olmeda next claims that the Sentencing Guidelines were created in violation of the constitutional mandate of separation of powers because the PROTECT Act encroaches on the judicial function of the Sentencing Commission.

In *Mistretta v. United States*, the United States Supreme Court upheld the constitutionality of the Guidelines and denied a defendant's claim that the Sentencing Commission was constituted in violation of the established doctrine of separation of powers, and that Congress delegated excessive authority to the Commission to structure the Guidelines. 488 U.S. 361, 370 (1989). The Court held, "[t]he Sentencing Guidelines are constitutional, since Congress neither (1) delegated excessive legislative power to the Commission nor (2) violated the separation-of-powers principle by placing the

Commission in the Judicial Branch, by requiring federal judges to serve on the Commission and to share their authority with non-judges, or by empowering the President to appoint Commission members and to remove them for cause." *Id.*

Furthermore, in *Mistretta* the Court stated, "[c]ongress' decision to create an independent rulemaking body to promulgate sentencing guidelines and to locate that body within the Judicial Branch is not unconstitutional unless Congress has vested in the Commission powers that are more appropriately performed by the other Branches or that undermine the integrity of the Judiciary." 488 U.S. at 385.

Defendant Olmeda acknowledges that the Supreme Court has upheld the constitutionality of the Sentencing Commission, but argues that the PROTECT Act violates the separation-of-powers doctrine because it encroaches on the judicial function of the Sentencing Commission. (Doc 44 - Pg 44). Olmeda provides no case law to support his argument.

The PROTECT Act does not violate the separation of powers doctrine because, just like the Court in *Mistretta* said, "the sentencing function long has been a peculiarly shared responsibility among the Branches of Government and has never been thought of as the exclusive constitutional province of any one Branch." 488 U.S. at 390. The PROTECT Act explains with particularity the sentencing guideline that it is to be imposed against a Defendant and its exceptions, serving as a guide for the courts to follow. Appellate courts have consistently upheld provisions of the PROTECT Act under separation of powers attacks, including those which give the executive branch the sole power to decide if a point reduction is appropriate. *See United States v. Medina-Beltran,*

542 F.3d. 729, (9th Cir. 2008), citing, *United States v. Newson*, 515 F.3d 374, 379 (5th Cir.2008); *United States v. Delk*, 132 Fed.Appx. 448, 449 (4th Cir.2005) (unpublished). Again, Defendant Olmeda's claim fails as a matter of law.

### 3.  DUE PROCESS AND EQUAL PROTECTION UNDER THE FIFTH AND FOURTEENTH AMENDMENTS CLAIM.

Finally, Defendant Olmeda alleges he was "denied Due Process and Equal Treatment/Protection under the Fifth and Fourteenth Amendments." (Doc 44 - Pg 46). He argues that a "Life" sentence is defined as 470 months (39.2 years) by the United States Sentencing Guidelines Commission, and the same is used by courts when considering downward departures; however, when sentencing all other defendants, the 470 months is not applied. Defendant claims these differences in sentencing create an "unwarranted disparity." (Doc 44 - Pg 46, 47).

The Sentencing Guidelines called for a life sentence in Olmeda's case. While the Guideline range was calculated to be a term of life imprisonment, the application of the statutory maximum of thirty years for each of the five counts effectively capped the sentence at a statutory maximum of 150 years. (PSR para. 61, 62). Olmeda was sentenced to 30 years imprisonment as to Counts 1 through 5, said terms to run consecutively, resulting in a total of 150 years (1800 months). (Doc 27).

The Guidelines Manual does not specify a means of converting a life term into a determinate period of years or months. In some instances, the Sentencing Commission has equated life imprisonment with a term of 470 months. U.S. Sentencing Commission, 2010 Sourcebook of Federal Sentencing Statistics, app. A, at 2 (15th ed. 2010) ("Length

14

of Imprisonment"). The Guidelines, in cases involving multiple counts of conviction, expressly direct the sentencing court "to impose maximum and consecutive sentences to the extent necessary to make the total punishment equal in severity to what the guidelines would require were it not for the statutory maxima." *United States v. Veysey*, 334 F.3d 600, 602 (7th Cir.2003) (citing U.S.S.G. § 5G1.2(d)). Following that approach here, the district court imposed five consecutive terms of thirty years, for a total of 150 years.

Olmeda argues that his sentence of 150 years violated his Due Process rights because the Sentencing Guidelines Commission equates life to 470 months and his sentence exceeded that. He offers no legal precedent in support of this claim.

The United States Supreme Court has defined Due Process as follows:

> For all its consequence, "due process" has never been, and perhaps can never be, precisely defined. "[U]nlike some legal rules," this Court has said, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230. Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

*Lassiter v. Department of Social Services of Durham County, N.C.*, 452 U.S. 18, 24, 25 (1981).

In addressing equal protection and due process claims in a criminal law context, the Supreme Court has required that a defendant demonstrate a discriminatory effect and discriminatory purpose. See, *United States v. Armstrong*, 517 U.S. 456 (1996). Defendant Olmeda has failed to allege *or* establish a discriminatory effect at sentencing

based on the trial court's reliance on an established provision of the Sentencing Guidelines.

The Seventh Circuit opinion in *United States v. Metzger*, 411 Fed. Appx. 1 (7th Cir. 2010), is instructive on the issue of how the Guidelines define a "life" sentence for sentencing purposes. In *Metzger*, the defendant was sentenced to 235 years (2,280 months) and lifetime supervised release for the production of child pornography. The Defendant appealed, arguing that his sentence was substantially unreasonable. The appellate court stated:

> Metzger's sentencing range was "life," *see* U.S.S.G. § 5 Pt. A, cmt. n. 2, which the guidelines themselves do not define. The Sentencing Commission's 2009 Sourcebook of Federal Sentencing Statistics equates "life" under the guidelines to 470 months, *see* Sourcebook, Appendix A, at http://www.ussc.gov/ANNRPT/2009/appendix A.pdf (last visited Oct. 7, 2010), but courts use this comparison only in the context of determining a starting point for departing *downward* from a life sentence. On the other hand, the guidelines instruct judges in the case of multiple counts of conviction "to impose maximum and consecutive sentences to the extent necessary to make the total punishment equal in severity to what the guidelines would require were it not for the statutory maxima. *United States v. Metzger*, 411 F. App'x 1, 3 (7th Cir. 2010).

In determining the particular sentence to be imposed, one of the factors sentencing courts consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C.A. § 3553(a)(6). Olmeda has failed to establish how his sentence creates an unwarranted disparity among defendants with similar records who have been found guilty of similar conduct. Olmeda does not cite a single case where a similarly situated defendant's sentence was limited to 470 months. In fact, numerous federal cases uphold

sentences exceeding 470 months for similar crimes.

In *United States v. Johnson*, the defendant was convicted of two counts of production of child pornography and one count of distribution of child pornography. 451 F.3d 1239, 1241 (11th Cir. 2006). The Defendant had a total offense level of 43 and a criminal history category of V. The Defendant was sentenced to the statutory maximum of 50 years for the two counts of production of child pornography and 40 years for one count of distribution of child pornography. Each of the three counts to run consecutively for a total of 140 years.

In *United States v. Castillo*, the defendant was convicted of "four counts of production of child pornography in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B)." 427 F. Appx. 748, 748 (11th Cir. 2011). The Defendant was sentenced to 30 years for each count of child pornography and 10 years for possession of child pornography resulting in 1,560 months to run consecutively.

After analyzing *Castillo* and *Johnson*, if the sentencing court had sentenced Olmeda to less than 30 years for each count, that would have resulted in an unwarranted disparity among defendants with similar records. Therefore, Olmeda's sentence of 150 years avoids any "unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C.A. § 3553(a)(6).

C. **CONCLUSION.**

Defendant Olmeda failed to raise his constitutional claims at sentencing or on direct appeal, and having failed to raise them each claim has been forfeited. Assuming

*arguendo* that the claims were not forfeited, each claims fails on the merits as a matter of law.

WHEREFORE, the United States of America requests this Honorable Court deny the Defendant's Section 2255 Motion without an evidentiary hearing.

Respectfully submitted,

PAMELA C. MARSH
United States Attorney

/s/ F. T. Williams
F. T. WILLIAMS
Assistant United States Attorney
Northern District of Florida
Florida Bar No. 936219
300 E University Ave, Suite 310
Gainesville, FL 32601
(352) 378-0996

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed electronically with the Clerk of the Court using the CM/ECF filing system on the 2nd day of July, 2012, and a true and correct copy of the foregoing has been forwarded by regular U.S. Mail this 2nd day of July, 2012, to: Keith E. Olmeda, No. 20651-017, U.S.P. Tucson, P.O. Box 24550, Tucson, AZ 85734.

/s/ F. T. Williams
F.T. WILLIAMS
Assistant United States Attorney